IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE LTISD-DD DOE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:19-CV-00430-RP |
| | § | |
| LAKE TRAVIS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| Defendant. | § | |

**DEFENDANT LAKE TRAVIS INDEPENDENT SCHOOL DISTRICT'S THIRD MOTION TO DISMISS AND SECOND MOTION FOR SUMMARY JUDGMENT**

Holly G. McIntush
Texas Bar No. 24065721
Danielle D. Dary
Texas Bar No. 24089111
**THOMPSON & HORTON LLP**
8300 N. MoPac Expressway, Suite 220
Austin, Texas  78759
(512) 615-2350
(512) 682-8860 fax
hmcintush@thompsonhorton.com

**ATTORNEYS FOR THE DEFENDANT**

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................ 1

III.  ARGUMENT & AUTHORITIES ...................................................................... 6

    A.    Standard of Review ............................................................................... 7

        1.    Motion to Dismiss .................................................................. 7

        2.    Motion for Summary Judgment ............................................. 7

    B.    Title IX only imposes penalties for intentional discrimination by a school district itself. ....................................................................................... 8

    C.    Motion to Dismiss: Plaintiff has not pleaded retaliatory harassment by E.C or any other students, or parents that were reported to an "appropriate official" at LTISD. ................................................................................. 11

    D.    Motion for Summary Judgment: Plaintiff cannot prove the essential elements of a Title IX Retaliation Claim ........................................................... 14

        1.    There is no evidence that LTISD took any adverse action against Plaintiff in retaliation for her having reported alleged harassment by Coach Coleman. ......................................................... 14

        2.    There is not a genuine question of material fact regarding whether LTISD was deliberately indifferent to retaliatory harassment by E.C. ......... 15

            a)    The only behavior by E.C. that was reported to an appropriate LTISD official did not constitute retaliatory harassment. .................................................................. 15

            b)    LTISD was not deliberately indifferent to E.C.'s misbehavior. ....... 16

        3.    There is no evidence that an appropriate LTISD official was aware of retaliatory harassment by other students that occurred in a context within LTISD's control. ....................................................... 17

        4.    LTISD cannot be held liable for the behavior of students' parents. .......... 18

            a)    There is no evidence that LTISD had actual knowledge of Plaintiff and her father being confronted by an "angry mob" of softball parents. ......................................................... 18

            b)    There is no evidence that LTISD had actual knowledge of other students refusing to warm up or play with Plaintiff, or that this occurred in connection LTHS softball. ............................... 19

IV.   CONCLUSION ............................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................ 21

Plaintiff Jane Doe brings a Title IX retaliation claim based on how she was treated by her softball teammates after she filed a complaint against their coach. But under Fifth Circuit and Supreme Court case law, LTISD cannot be held liable for the actions of its students, but only for its own discriminatory acts. Plaintiff does not plead or present any evidence that anyone at LTISD did anything retaliatory against her. Therefore, she can proceed, if at all, only by proving the elements of a traditional actual knowledge and deliberate indifference Title IX claim. She has not pleaded or presented evidence of these essential elements and her claim should be dismissed.

## I.     PROCEDURAL HISTORY

Doe's parents filed suit in April 2019 on her behalf, as she was a minor at the time, against LTISD and then Lake Travis High School ("LTHS") Softball Coach Billy Coleman. Dkt. 1. Following multiple extensions of the discovery deadline, Doe's hiring of new counsel, and her reaching the age of majority on August 9, 2021, the discovery period closed on October 15, 2021. *See* Text Order Granting Dkt. 50. On October 22, 2021, the Parties jointly sought and were granted leave for the Plaintiff to file a Second Amended Complaint that would remove all claims against Defendant Billy Coleman and remove all claims against Defendant Lake Travis ISD except the Title IX retaliation claim based on alleged incidents following Coleman's return to his teaching position after Lake Travis ISD concluded its investigation of the Title IX Complaint that Plaintiff and her parents filed with Lake Travis ISD. Dkt. 58. Plaintiff later requested leave to file a Third Amended Complaint, which the Court granted on December 9, 2021. *See* Dkt. 64.

## II.     FACTUAL BACKGROUND

In fall 2017, Plaintiff Jane Doe was a student at Lake Travis High School and a member of the girls' junior varsity softball team. Dkt. 64, ¶ 1. On September 21, 2017, Plaintiff and another student were complaining that they had not been permitted to practice batting on the field with the varsity team. Dkt. 24-2 (Declaration of B. Coleman, dated May 8, 2020, Exhibit C to LTISD's First MSJ) at

¶ 6. Coleman approached the students and told them to raise any concerns with him. *Id.* That evening, Coleman received an email from Plaintiff's mother stating she had encouraged Plaintiff to speak to Coleman. *Id.* Coleman and Nicole Herrera, the assistant softball coach, met with Plaintiff the next day. *Id.* The coaches explained that her softball skills were not yet advanced enough to play on the varsity team, and that she needed to adjust her attitude about her position on the team. *Id.* On September 26, another student showed Coleman a video Plaintiff had posted on social media of Plaintiff kissing her boyfriend, J.N.,[1] on the LTHS campus, in violation of school rules. *Id.*; *see also* Dkt. 25-2 (Declaration of G. Butler, Exhibit D to LTISD's First MSJ) at ¶ 12 & LTISD/Doe 109-110. The following morning, during workouts in the weight room, Coleman approached Plaintiff and instructed her not to post pictures or videos like that on social media. Dkt. 24-2 at ¶ 7; Dkt. 25-2 at LTISD/Doe 109-110. Plaintiff later told another student that she was going to get Coleman in trouble because Plaintiff thought she was going to be disciplined for posting the video. *See* Dkt. 25-2 at LTISD/Doe 88.

Later in the evening of September 27, 2017, Plaintiff's father contacted LTHS Principal Gordon Butler to report that Plaintiff was allegedly sexually harassed by then LTHS softball coach, Billy Coleman.[2] *See* Dkt. 25-2 at ¶ 7 & LTISD/Doe 20-21; *see also* Dkt. 64 at ¶¶ 1, 12. The morning after Plaintiff's father called the LTHS Principal, Plaintiff was interviewed by Associate Principal Karen Reich and Assistant Principal Patrick Hinson and gave her own oral and written statements of the allegations. *See* Declaration of K. Reich at ¶ 3, attached as **Exhibit A**; Declaration of P. Hinson at ¶ 3, attached as **Exhibit B**; Dkt. 25-2 at LTISD/Doe 16-19. The District immediately commenced an investigation (*see* Exh. A-1 and Dkt. 64 at ¶ 13) and reported the matter to Child Protective Services. Dkt. 25-2 at LTISD/Doe 25. Coleman was placed on administrative leave on September 28, pending

---

[1]    To protect the identity of both Plaintiff and any non-party students, non-party students are referred to by their initials only. Dkt. 19 at ¶¶ 1, 13.

[2]    Plaintiff alleges that she had first told her parents about the Coach's alleged inappropriate behavior as early as August 28, 2017. Dkt. 64 at ¶ 12.

the outcome of the District's investigation of Plaintiff's allegations. Dkt. 24-2 at ¶ 8; *see also* Dkt. 25-2 at ¶ 8.

Reich and Hinson interviewed 21 students, including students identified by Plaintiff as witnesses to her allegations. Exh. A at ¶ 3; Exh. B at ¶ 3; *see also* Dkt. 25-2 at LTISD Doe 34-83 (witness statements). The District's investigation concluded on October 5, 2017. Exh. A-1; Exh. B-1; *see also* Dkt. 64 at ¶ 15. The investigation ultimately did not substantiate Plaintiff's allegations of inappropriate touching or sexual harassment. Exh. A at ¶ 3 & A-1; Exh. B at ¶ 3 & B-1. Coleman was returned to teaching and coaching duties on October 10, 2017. Dkt. 24-2 at ¶ 8; *see also* Dkt. 25-2 at ¶ 9. Although the investigation did not substantiate sexual harassment, because some students reported that Coleman's physical contact made them uncomfortable, Coleman was directed to limit physical contact meant to congratulate players on good plays to high fives and fist bumps. avoid physical contact with students that could make them uncomfortable. Dkt. 25-3 (Declaration of H. Carter, Exhibit E to LTISD's First MSJ) at ¶ 8 & LTISD/Doe 408-409. The District also directed Coleman to attend additional training on Title IX. *Id.*

The Travis County Sheriff's Department also conducted an investigation, found no evidence of criminal conduct, and closed the case. Dkt. 24-2 at ¶ 8. The Texas Department of Family and Protective Services conducted an investigation and ultimately "ruled out" any sexual abuse. *Id.* The State Board for Educator Certification conducted an investigation and found the allegations did not warrant further action. *Id.*

Plaintiff complains that, because she was pulled from class for interviews, students were able to identify her as the person who made the complaint against the coach. Dkt. 64 at ¶ 16. As a result, Plaintiff complains that she was alienated by her softball teammates who would "completely ignore her, even refusing to warm up or play with her." *Id.* at ¶ 17. She alleges that her father came to the school to support her and was "confronted by an angry mob of softball parents that had gotten word

of what was going on." *Id.* at ¶ 18. She further alleges that softball players bullied and harassed her during her other classes and in the hallway and that in one class, someone posted a picture of a hangman's noose on a whiteboard proclaiming "[Plaintiff] is dead." *Id.* at ¶ 21. She also alleges that additional harassment occurred online via social media. *Id.* at ¶ 22. She claims her mother "emailed the school administration almost on a daily basis" about the "whispers, alienation, and bullying," and offensive social media posts, but that her requests for help went unanswered. *Id.* at ¶¶ 19-20, 23.

The evidence paints a different picture. It shows that, during the investigation, Reich checked with Plaintiff to see if she needed additional support. Exh. A at ¶ 4; *see also* Exh. A-2. LTHS Counselor Bel Portillo and Special Education Case Manager Sacha Brown also provided Plaintiff with academic and other support during and after the investigation. Brown was responsive to each of Plaintiff's mother's requests and worked with Plaintiff on missing or late assignments, often seeking and obtaining accommodations from teachers to allow her to re-take tests, take tests on a later day than originally scheduled, or turn in assignments after the due date without the usual late penalty. *See* Exh. C-1 through C-7; *see also* Declaration of S. Brown, attached as **Exhibit C**. Brown also provided emotional support to Plaintiff, leading Plaintiff to tell her parents that she felt supported by and loved Brown and Plaintiff's mother to thank Brown for all the support. Exhs. C-1, C-5, C-7, & C-8.

Portillo worked with Plaintiff on scheduling issues. Plaintiff had math and softball with Coach Coleman's stepdaughter, E.C. *See* Declaration of B. Portillo at ¶¶ 5-6, attached as **Exhibit D**. Plaintiff and E.C. were friends prior to Plaintiff's allegations, but the girls' friendship did not survive Plaintiff accusing E.C.'s stepfather of inappropriate behavior. Declaration of B. Coleman, dated Dec. 7, 2021 at ¶ 7, attached hereto as **Exhibit E.** Portillo reached out to Plaintiff on Monday, October 2, 2021 to see if Plaintiff was concerned about having math with E.C. and offered to help Plaintiff switch sections of the class, which Plaintiff originally declined. Exh. D at ¶ 6; *see also* Exh. D-2. She also declined a stay away agreement between herself and E.C. Exh. D at ¶ 6; *see also* Exh. D-2. A few weeks later,

Plaintiff asked to change her schedule to transfer out of softball. Exh. D at ¶ 7; Exh. D-3. The District agreed and offered to assemble the committee required by federal law to approve the change, but Plaintiff then expressed concern about how the change would impact other parts of her schedule. Exh. D-3 through D-5. Instead, in late October, a stay away agreement was issued between Plaintiff and E.C., and the necessary teachers and other personnel were notified that there was to be no "social communication" between the two girls and were asked to not seat the girls near each other and to monitor the situation. Exh. A at ¶ 6; Exh. A-4. There is no evidence that Plaintiff ever requested that E.C. or any other student be removed from a class because of bullying, nor did Plaintiff's mother include it in her sworn list of "all requests for relief and/or remedies" they sought from LTISD. See Plaintiff's Interrogatory Responses at No. 2, attached hereto as **Exhibit F**.

In October 2017, Plaintiff received two days of detention for unrelated disciplinary issues. Exh. B at ¶ 4. LTHS officials initially worked with Plaintiff's mother to ensure Plaintiff did not receive detention on the same days as her boyfriend, J.N. *Id.*; Exh. B-2. Then, when Plaintiff's mother asked school officials to move the detention to accommodate Plaintiff's club softball schedule, they accommodated her. Exh. B at ¶ 4; Exh. B-2. In mid-November 2017, her mother notified the school that because Plaintiff had "fallen in" with a group of students who the mother appeared to believe encouraged Plaintiff to misbehave, she intended to withdraw Plaintiff from school. Exh. C-5. School personnel spoke with Plaintiff's mother and encouraged Plaintiff to stay through the end of the semester, so that she did not lose her course credits; to help her to do so, the District allowed Plaintiff to leave early on certain days so she could switch math classes and drop softball without having to alter the rest of her schedule. Exh. B at ¶¶ 6-7; Exh. B-6 - B-7; *see also* Exh. C-9.

Late in the fall semester, Plaintiff's mother emailed a handful of times regarding actions allegedly taken by E.C. In mid-November 2017, Plaintiff's mother complained that E.C. was "bullying" Plaintiff by "talking badly" about her, making the solution in a game of hangman be

"[Plaintiff] is gone," another time writing "[Plaintiff] isn't here" on a whiteboard, and telling a group of girls that Plaintiff "needs to close her legs." Exh. B at ¶ 5; Exh. B-3 through B-4. Assistant Principal Hinson investigated the allegations and imposed disciplinary consequences on E.C. for her behavior. Exh. B at ¶ 5; *see also* Exh. B-5.

As to the allegations regarding other softball players purportedly refusing to practice or play with Plaintiff, when asked to provide sworn testimony regarding any and all instances of bullying and the requests she made of LTISD regarding them, Plaintiff pointed only to actions taken in connection with the club softball team coached by parent volunteers during the fall off-season—not to actions that occurred in the LTHS softball course or any LTISD program. *See* Exh. F at Interrogatory Nos. 2, 12; Declaration of H. Carter, dated Dec. 17, 2021, at ¶ 4, attached as **Exhibit G**.

In mid-December 2017, Plaintiff's mother sought accommodations for Plaintiff to delay her mid-term examinations due to a death in the family, and LTISD accommodated the request. Exh. C-7. Plaintiff withdrew from enrollment at LTISD on January 8, 2018, to enroll in a neighboring school district. Exh. B-8. LTISD officials worked with her parents to fill out the necessary paperwork to allow her to play softball in her new school district. Exh. B at ¶ 8; Exh. B-8; *see also* Dkt. 25-3 at ¶ 9.

## III.  ARGUMENT & AUTHORITUES

Plaintiff has not properly pleaded all the elements of a prima facie case of a Title IX retaliation complaint. Specifically, Plaintiff has not pleaded that she was subject to an adverse action that denied her equal access to LTISD's educational programs or activities, much less that LTISD had actual knowledge of these adverse actions. As such, her complaint should be dismissed before the evidence is even evaluated. Further, even if her pleaded allegations as to these essential elements were sufficient, there is insufficient evidence in the record to create a disputed question of material fact regarding them. Because Plaintiff cannot prove all the elements of her only remaining claim, her complaint should be dismissed on the pleadings or on summary judgment.

A.    **Standard of Review**

1.    **Motion to Dismiss**

A claim may be dismissed under Rule 12(b)(6) if it either fails to state a cognizable legal theory or fails to plead facts sufficient to support an otherwise cognizable legal theory. *E.g. Escuadra v. Geovera Specialty Ins. Co.*, 739 F.Supp.2d 967, 977 (E.D. Tex. 2010); *Morrow v. Bank of Am., N.A.*, No. 5:12-cv-00782, 2013 WL 12131235, at *1 (W.D. Tex. June 10, 2013). For purposes of a motion to dismiss, the movant must assume the truth of all pleaded allegations, "even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss for insufficient facts, the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 570. A claim is plausible on its face if the factual allegations allow a reasonable inference that the defendant is liable. *Id.* "[C]onclusory allegations, unwarranted deductions, or legal conclusions," however, do not suffice. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

2.    **Motion for Summary Judgment**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Wilkerson v. Univ. of N. Texas*, No. 4:15-CV-00540, 2018 WL 6331686, at *2–3 (E.D. Tex. Dec. 4, 2018). A court may terminate litigation by rendering summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A material fact issue is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, admissions and affidavits on file indicate no genuine issue as to any material fact. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Where the nonmoving party bears the burden of proof, the moving party may discharge its burden by showing an absence of evidence to support the

nonmovant's case. *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmovant to show otherwise "by setting forth particular facts indicating that there is a genuine issue for trial." *Byers*, 209 F.3d at 424. Conclusory assertions are insufficient to raise a genuine issue of material fact precluding summary judgment. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

**B.    Title IX only imposes penalties for intentional discrimination by a school district itself.**

Title IX provides that, "[n]o person in the United Stated States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress adopted Title IX pursuant to its authority under the Spending Clause, which necessarily limits the remedies that are available for violations. *See Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 287 (1998). When Congress acts pursuant to its spending power, the offer of federal funds is in the nature of a contract: in return for federal funds, the funding recipient agrees to certain conditions. *Id.* at 287. When a school board accepts federal education funds, it agrees not to discriminate on the basis of sex. When the funding recipient itself intentionally discriminates, it violates the contractual agreement and can be held liable. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74 (1992). The only express statutory remedy for violating Title IX is termination of federal funds by the Department of Education, but the Department cannot terminate funds unless the school has been given an opportunity to take corrective action and fails to do so. *Id.* at 280-81, 288-89 (discussing 20 U.S.C. § 1682 and 34 C.F.R. §§ 100.7(d), 100.8(d)). In *Cannon v. University of Chicago*, 441 U.S. 677 (1979) the Supreme Court held that Title IX is also enforceable through an implied private right of action, and in *Franklin*, the Court established that money damages are available for intentional violations. 503 U.S. at 61-62.

Title IX liability—whether via administrative enforcement or private litigation—does not attach for the bad acts of a rogue employee or another student, but rather only for the acts of the institution itself. *Gebser,* 524 U.S. at 291. "[A]t its core, the implied Title IX remedy that the Supreme

Court recognized depends on meaningful notice to a funding recipient so that it will have an opportunity to remedy the discrimination." *Salazar v. S. San Antonio Indep. Sch. Dist.*, 690 F. App'x 853, 860 (5th Cir. 2017). In other words, the institution "is liable for its own lack of corrective action rather than the actions of the offend[er]." *Watkins v. La Marque Indep. Sch. Dist.*, 308 F. App'x 781, 783 (5th Cir. 2005). Thus, in a typical Title IX sexual harassment case, the plaintiff must show that (1) she suffered harassment that was so severe, pervasive, and objectively offensive that it denied her equal access to an educational program or activity; (2) the school had substantial control over both the harasser and the context of the harassment; and (3) an appropriate person had actual knowledge of alleged harassment; and (4) responded with deliberate indifference. *Davis*, 526 U.S. at 652, 65. An appropriate person is someone whose knowledge or decision is "functionally equivalent to the school district's actual knowledge." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997). In the Fifth Circuit, the appropriate person inquiry is specifically designed to "omit the bulk of employees." *Id.*; *see also Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 361 (5th Cir. 2020). The deliberate indifference inquiry focuses on the school's response to the known harassment; as such, the response must be so deficient as to itself constitute harassment. *I.L. v. Hous. Indep. Sch. Dist.*, 776 F. App'x 839, 843 (5th Cir. 2019); *see also Watkins*, 308 F. App'x at 784 ("'the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.'" (*citing Davis*, 526 U.S. at 644-45).

Retaliation against an individual because they complained of sexual discrimination or harassment is itself discrimination, and *when it is the funding recipient that takes the retaliatory action*, constitutes "intentional conduct that violates the clear terms of the statute." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005). To establish Title IX retaliation, a plaintiff must show that the district or its representatives took an adverse action against her because she complained of harassment. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011). "That typically

means the funding recipient itself signed off on the adverse action." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020) (citing *Jackson*, 544 U.S. at 171-72). In such a case, the plaintiff must show that: (1) she engaged in activities protected by Title IX; (2) the educational institution took adverse action against her; and (3) the adverse action was *because of* her protected activity. *Lowrey v. Tex. A&M Univ. Sys.*, 11 F. Supp. 2d 895, 912 (S.D. Tex. 1998).

When a plaintiff claims that someone other than the school board or its representative took the discriminatory action—such as a campus-level employee or a student—Title IX requires deliberate indifference. *Id.* (citing *Gebser*, 524 U.S. at 290). The Fifth Circuit has not recognized liability for retaliatory acts by students but has instead noted that the retaliation must be by "the district or its representatives." *Sanches*, 647 F.3d at 170. The Fourth Circuit has recognized liability for student-on-student retaliation, but only where the known retaliatory acts rise to the level of harassment and only when the school district "'exercises substantial control over both the [student engaged in retaliatory harassment] and the context in which the known [retaliatory harassment] occurs,'" as consistent with Supreme Court case law. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 695–96 (4th Cir. 2018) (*quoting Davis*, 526 U.S. at 645) (alterations in original). Thus, to the extent Plaintiff can ever state a claim for Title IX retaliation based on the alleged retaliatory acts of third parties, the Plaintiff must establish that (1) she engaged in protected activity under Title IX; (2) someone took adverse action against her that amounted to harassment; (3) the actions occurred while the retaliator was under the substantial control of LTISD; (4) these actions were taken against her *because of* her protected activity; (5) someone whose knowledge or decision is "functionally equivalent to the school district's actual knowledge" was aware of the retaliatory actions; and (6) the school district refused to take corrective action.

Here, Plaintiff only pleads allegedly adverse actions by other students or parents of other students. *See* Dkt. 64 at ¶¶ 1, 16, 17, 18, 19, 21, 22, 25, 30, 31. She does not plead that LTISD took retaliatory actions, but rather that LTISD "failed to reasonably respond" to the alleged behavior. *Id.*

at ¶¶ 30-31. LTISD does not contest that Plaintiff's complaint of alleged sexual harassment by her softball Coach is a protected activity, nor, for purposes of this motion only, that the alleged actions were taken because she filed the complaint.[3] But it does contend that Plaintiff has not properly pleaded and cannot establish the other required elements of a Title IX retaliation claim.

**C.      Motion to Dismiss: Plaintiff has not pleaded retaliatory harassment by E.C or any other students, or parents that were reported to an "appropriate official" at LTISD.**

Plaintiff alleges that she was subject to "bullying, harassment, and retaliation" following her report. Dkt. 64 ¶ 16. More specifically, she alleges she "suffered alienation at the hands of her teammates. They would completely ignore her even refusing to warm up or play with her." Dkt. 64 ¶ 17. But withholding of friendship is not retaliatory harassment. In the employment context, the Fifth Circuit has held that "[d]iscourtesy or rudeness, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment" so as to constitute an adverse action. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) (internal quotation marks omitted). And "in the context of student-on-student harassment," the Supreme Court has held that "damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Davis*, 526 U.S. at 652, 653. Having to warm up alone is not the same as not being allowed to warm up or being denied a spot on the team. Nor does calling behavior "bullying and harassment" make it actionable in a lawsuit for money damages.

It is an almost universal truth that parents hope their child will not exclude or be excluded by their teammates and classmates. But the Supreme Court and Fifth Circuit have cautioned that:

> "[i]t is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." Thus, to be actionable, the harassment must be more than the sort of teasing and bullying that generally takes place in schools; it must be "severe,

---

[3]      LTISD reserves the right to contest this element if this matter proceeds to trial.

pervasive, and objectively unreasonable." The [Supreme] Court further warned, in response to the concern that a school might be liable for *any* negative student interactions, that courts should not be "mislead … to impose more sweeping liability than" what title IX requires.

*Sanches*, 647 F.3d at 167 (quoting *Davis*, 526 U.S. at 651-52). Plaintiff's general allegations of being ignored simply do not rise to this level.

Nor does she allege that any LTISD official with authority to repudiate and correct the behavior have knowledge of it. While she alleges that "in one class someone posted a picture of a hangman's noose on a whiteboard with Plaintiff's name on it and proclaiming "__ is dead," she does not allege that she reported this incident to any LTISD official or that any LTISD official observed it—nor does she allege anything about how any such official responded to her report. This allegation of an isolated, unreported incident is not sufficient to save her complaint.

Plaintiff alleges that E.C. was "her tormenter," but does not allege any specific actions to justify this label. There is a difference between labeling a student as a tormenter and pleading facts that establish her as such. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]' to relief' requires more than labels and conclusions"). "[A] court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff next complains that a group of parents who supported Coach Coleman confronted her father when he came to support her. Dkt. 64 at 18. No facts are provided regarding what the parents said that would allow the Court to conclude that this incident, aimed at her father, amounted to an act of retaliation against the Plaintiff. Furthermore, Plaintiff alleges nothing regarding whether an appropriate official knew about this incident, much less any *facts* regarding LTISD's response. The conclusory allegation that the District "fail[ed] to reasonably respond" is exactly the type of conclusory allegation that the Supreme Court has stated is not entitled to the assumption of truth. *Iqbal*, 556 US. at 679-81.

Finally, Plaintiff complains that "[s]ocial media made matters worse." Dkt. 64 at 22. But this allegation is even more vague than her complaint regarding the parents. She does not allege who said what on which platform. Without these crucial details, the Court would have to engage in pure speculation to jump to the conclusion that this allegation supported a claim for retaliatory harassment. Under longstanding Supreme Court precedent, Title IX does not apply unless the complained of behavior takes place in a context under the substantial control of the school, which leaves out almost all social media posts. *See Davis*, 526 U.S. at 645 ("Moreover, because the harassment must occur "under" "the operations of" a funding recipient, the harassment must take place in a context subject to the school district's control."). And here, we do not even know if the people creating the posts are students, parents, or people not affiliated with the school in anyway. *See id.* at 646. Without these crucial details, it is impossible to judge whether the posters are ever subject to the substantial control of the school district, much less whether they were when they posted whatever "made matters worse." The Supreme Court recently reminded public school districts that their right to regulate off-campus speech on social media is "diminished" and any analysis of their ability to do so must be context specific—considering the substance of the student's speech and its context. *See generally Mahoney Area Sch. Dist. V. B.L.*, 141 S. Ct. 2038 (2021). Without pleading *what* was said, it is impossible for her to plead the necessary facts to show that it was unreasonable under the (un)known circumstances for the school district to not discipline the posters (assuming they were someone the school could discipline).

Because Plaintiff has not plead facts sufficient to allow the Court to conclude that she was subject to retaliatory harassment, much less that an appropriate official had actual knowledge of the harassment, she has not plead a claim for relief that rises above the level of speculation and her complaint should be dismissed.

**D.    Motion for Summary Judgment: Plaintiff cannot prove the essential elements of a Title IX Retaliation Claim**

    **1.    There is no evidence that LTISD took any adverse action against Plaintiff in retaliation for her having reported alleged harassment by Coach Coleman.**

Just as there are no allegations that LTISD itself took any adverse action against Plaintiff because she filed a Title IX complaint, there is no evidence of retaliation by LTISD. Each of the actions of the alleged bullying or harassment following her complaint of which she complaints were at the hands of her fellow students. In response to an interrogatory seeking information regarding each instance of alleged bullying that she suffered following her Title IX complaint, Plaintiff responded that "the other girls of the softball team ostracized Jane." Exh. F at No. 12. She also referred to her answer to an interrogatory seeking information regarding any requests for relief or remedies that she sought from LTISD, which likewise points to the actions of other students and, in particular, to E.C., as well as to the refusal of two fathers of other LTHS softball players to ensure that other students warm up with her before their club (non-school) softball games. Exh. E at No. 2; *see also* Exh. G at ¶ 4. The documentary evidence and testimony of LTISD employees also points only to incidents by other students. *See* Exh. B at No. 5; Exh. B-3; Exh. B-4; Plaintiff's Response to LTISD's First Set of Requests for Production, attached as **Exhibit H**; Email Communications between Plaintiff's Mother and P. Hinson, attached as **Exhibit I**.

But LTISD can only be held responsible for its own intentional discriminatory acts; it cannot be held financially liable for the actions of a rogue employee or its students, much less the parents of those students. *See Davis*, 524 U.S. at 291. As such, Plaintiff must go a step further and prove that LTISD was aware of and deliberately indifferent to retaliatory harassment by her fellow students and their parents. *See Feminist Majority*, 911 F.3d at 695.

2.    **There is not a genuine question of material fact regarding whether LTISD was deliberately indifferent to retaliatory harassment by E.C.**

    a)    *The only behavior by E.C. that was reported to an appropriate LTISD official did not constitute retaliatory harassment.*

Plaintiff alleges that "whispers, alienation, and bullying were almost on a daily basis" and that her mother emailed school administration about this just as often. Dkt. 64 at ¶ 19. But there is only evidence that Defendant knew about four incidents. Plaintiff's mother complained that:

- "rumors were flying" that E.C. was "talking badly" about Plaintiff;

- E.C. made the solution in a game of "hangman" be "[Plaintiff] is gone"[4];

- another time E.C. wrote "[Plaintiff] isn't here" on a whiteboard; and

- E.C. told a group of girls that Plaintiff "needs to close her legs."

Exh. B-3 through B-4; Exh. I; *see also* Exh. B at ¶ 5. Plaintiff's mother reported these incidents on November 16 and December 6. Exh. B-3 through B-4; Exh. I. Follow-up communications with Assistant Principal Hinson regarding how LTISD was addressing the incidents occurred on a handful of days in December and January. These incidents, and the communications regarding them, are the only alleged misconduct by E.C. to which Plaintiff pointed in her interrogatory responses to produced in discovery, when asked to provide information and documents regarding any alleged bullying and the reports she made to LTISD. Exh. F at Interrogatory Nos. 2, 12, 13; Exh. H at Request Nos. 5, 9, 16, 28. Nor did Plaintiff describe any telephone or in-person conversations regarding any other incidents involving E.C. Exh. F at Interrogatory Nos. 2, 12. Indeed, these four incidents are the *only* alleged incidents involving *any* LTISD student or employee that she reported to anyone at LTISD.

"Title IX was not intended to and does not function to protect students from bullying generally…" *Brodsky ex rel. S.B. v. Trumbull Bd. of Educ.*, No. CIV. 3:06CV1947PCD, 2009 WL 230708,

---

[4]    This incident is qualitatively different from the misleading allegation that someone drew a picture of a noose with Plaintiff's name stating "[Plaintiff] is dead." Dkt. 64 at ¶ 21.

at *7 (D. Conn. Jan. 30, 2009). In *Brodsky*, allegations of "rude and unkind treatment" in the form of name calling and insults by fellow students did not rise to the level of a Title IX violation. *Id.* at 6. The actions alleged by Plaintiff, while worthy of discipline, fall squarely within the category of rude but "offhand comments and isolated incidents" that are not sufficient to amount to retaliatory harassment. *See Indest*, 164 F.3d at 264.

### b) *LTISD was not deliberately indifferent to E.C.'s misbehavior.*

Even if these actions by E.C. were sufficient to constitute retaliatory harassment, Plaintiff cannot show that LTISD was deliberately indifferent to them. The determinative issue is whether LTISD's response to Plaintiff's report was clearly unreasonable under the known circumstances. *See K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 786-87 (5th Cir. 2017); *Sanches*, 647 F.3d at 167-68. Neither "negligence nor mere unreasonableness is enough." *Sanches*, 647 F.3d at 167-68. Courts find deliberate indifference in egregious circumstances that convey institutional indifference to student safety, such as where the institution ignores reports of student assaults and allows the perpetrator to return to its property, takes actions it knows will not work, or fails to investigate or discipline anyone. *Id.* at 169 n.10 (surveying case law); *see also Doe v. Northside Indep. Sch. Dist.*, 884 F.Supp.2d 485, 497 (W.D. Tex. 2012) ("The 'deliberate indifference standard is a high one.' … 'Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, 'even if the harm ultimately was not averted.'").

Here, Hinson promptly investigated the allegations and disciplinary consequences were imposed on E.C. for violating the stay away agreement. Exh. B at ¶ 5; *see also* Exh. B-5. Hinson specifically asked Plaintiff's mother to alert him if the discipline was insufficient to stop the misbehavior. Exh. B-5. No later incidents were reported to Mr. Hinson, nor did Plaintiff list any other incidents in her interrogatory responses or identify any request for LTISD to take further action in connection with later incidents. Exh. F at Interrogatory Nos. 2, 12, and 13.

Nor can Plaintiff point to the fact that she was "forced" to drop softball, because Plaintiff's mother is the one that requested that she be allowed to drop the softball class. Exh. F at Interrogatory No. 2. Indeed, when asked to identify all requests for relief or remedies that Plaintiff or her parents requested from LTISD and to produce any associated communications, Plaintiff complained, not that she was forced to withdraw, but that she wasn't allowed to withdraw sooner.[5] *Id.* And while Plaintiff alleges that her mother requested that E.C. be removed from class with Plaintiff but that the administration refused, she notably did not list such a request in her interrogatory response, and there is no evidence of such a request. The only email requests Plaintiff or her parents made of the school related to E.C. were emails from December 2017 and January 2018 in which Plaintiff's mother asked to be told if and how E.C. was disciplined in response to her November complaints. Exh. F at Nos. 2, 12, 13; Exh. H at Request Nos. 5, 9, 16, 23; Exh. I.

### 3.    There is no evidence that an appropriate LTISD official was aware of retaliatory harassment by other students that occurred in a context within LTISD's control.

Plaintiff alleges that her softball teammates alienated her and "refused" to warm up or play with her. But when asked to provide information regarding what bullying she underwent and to which employees she reported the bullying, she pointed only to her father asking the parents who served as volunteer coaches of the optional club softball team to ensure Plaintiff had someone to warm up with. *See* Exh. F at Interrogatory Nos. 2, 12, 13; Exh. G at. ¶ 4. She did not list any communications with any LTISD employees regarding this alleged alienation, nor did she produce any evidence that she reported these problems to any appropriate LTISD official. For his part, Coach Coleman testified that

---

[5]    While Plaintiff's interrogatory response suggests that her mother "repeatedly" requested that Plaintiff be allowed to withdraw from the class, the paper trail reflects that, in fact, Plaintiff initially chose to stay in the class because she did not like the impact on the rest of her schedule. Exh. D-2. When her parents later decided she needed to be moved anyway, she was allowed to do so as quickly as could be arranged given federal special education requirements. Exh. D-3; Exh. D-5; Exh. C-9.

---

he was not aware of and did not observe any harassment or bullying of Plaintiff in the LTHS softball class. Exh. E at ¶ 4. Nor is there any evidence that Plaintiff reported any other instances of alleged retaliatory harassment to an appropriate LTISD official. LTISD cannot be deliberately indifferent to harassment of which it was not aware

Plaintiff also alleges that she was subject to harassment via social media, but she does not present any evidence that the alleged retaliatory harassment was done by a student while under the substantial control of LTISD, or that she reported the alleged online harassment to an appropriate LTISD official. LTISD cannot be held liable for actions not under its programs or activities.

4.    **LTISD cannot be held liable for the behavior of students' parents.**

a)    *There is no evidence that LTISD had actual knowledge of Plaintiff and her father being confronted by an "angry mob" of softball parents.*

Plaintiff alleges that after she made the complaint against Coach Coleman, she and her father were confronted by an "angry mob of softball parents." As with rogue employees and students, LTISD cannot be held vicariously liable for the actions of other softball parents. *Gebser,* 524 U.S. at 291. Instead, this isolated incident is relevant to Plaintiff's retaliation claim only if she reported the incident to LTISD officials and they were deliberately indifferent to those reports. Yet here, there is no evidence that she reported the incident to anyone at LTISD. Indeed, her interrogatory responses did not list this alleged incident as an instance of purported bullying and harassment, nor did she claim to have reported this incident to any LTISD official. Exh. F at Interrogatory Nos. 2, 12, 13.

Importantly, Plaintiff does not provide any evidence to support a finding that LTISD's response, or lack thereof, to this incident caused her to undergo additional retaliatory harassment, as required under Supreme Court and Fifth Circuit case law. *Davis,* 526 U.S. at 644-45 ("If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it.").

"Because the deliberate indifference inquiry focuses on the school's response to known harassment, the response must be so deficient as to itself constitute harassment." *I. L. v. Houston Indep. Sch. Dist.*, 776 F. App'x 839, 843 (5th Cir. 2019). There is no evidence to support such a finding here, and Plaintiff's retaliation claim must fail as a result.

> **b)** **There is no evidence that LTISD had actual knowledge of other students refusing to warm up or play with Plaintiff, or that this occurred in connection LTHS softball.**

Plaintiff alleges that the other softball players "refus[ed] to warm up or play with here" and that this alienation was in retaliation for filing a complaint against Coach Coleman. But Plaintiff cannot hold LTISD liable for this alienation for two reasons. First, when asked to identify to whom she reported any bullying and what remedies she sought, Plaintiff stated that she asked two parent volunteers to make sure she could warm up with someone. Exh. F at Interrogatory No. 2. These parent volunteers did not have had any responsibility for or authority over the LTHS softball program or team in fall 2017. Exh. G at ¶ 4. Rather, they coached a club softball team—a voluntary activity in which most or all LTHS softball players participate in the off-season when University Interscholastic League rules prohibit the LTHS team from practicing or playing as a team after school. *Id.* LTISD does not select or supervise the coaches for the club softball team. *Id.* These parent volunteers are simply not individuals whose knowledge or decision is "functionally equivalent to the school district's actual knowledge," and there is no evidence that Plaintiff or anyone else reported this alleged alienation to anyone who was. *See Rosa H.*, 106 F.3d at 660.

Second, even if it had been reported to an appropriate LTISD official, there is no evidence that any such official could have repudiated the behavior, as there is no evidence that it occurred in a context under the substantial control of LTHS. To the contrary, the fact that her father asked the coaches of the voluntary club team to remedy the situation evinces that the behavior occurred in that voluntary program. Not only does LTISD not select or supervise the coaches for the club softball

team, LTISD does not schedule or supervise the club softball games, practices, or other club activities.

**Exh. F** at ¶ 4. In short, the club softball team is not a "program or activity" of LTISD, and thus LTISD is not financially liable for behavior that occurs within it. 20 U.S.C. § 1681 (prohibiting discrimination "under any education program or activity receiving Federal financial assistance"), § 1687 (defining "program or activity" as the "operations of" a local education agency); *see also Davis*, 526 U.S. at 645 (Title IX funding recipient's damages liability is "limited to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to "expose" its students to harassment or 'cause' them to undergo it 'under' the recipient's programs.").

There is likewise no evidence that such behavior also occurred in connection with the LTHS softball team. Coach Coleman testified that he did not observe and was not aware of LTHS softball players bullying, harassing, or alienating Plaintiff. Exh. E at ¶ 6. Any argument that LTISD "should have known" about any such behavior is not enough. Even if the alienation occurred and assuming arguendo that it rose to the level of retaliatory harassment (*see* Section IV.C, *supra*), Plaintiff cannot show that an appropriate LTISD had actual knowledge of the alleged retaliatory activity, and this is fatal to her claim.

## IV.    <u>CONCLUSION</u>

The Plaintiff's Title IX retaliations claim fails as a matter of law, and there are no genuine issues of material fact precluding summary judgment. The standards for private damages liability under Title IX are stringent and the Plaintiff has not satisfied them. Accordingly, the Defendant Lake Travis Independent School District respectfully requests that the Court grant this motion and dismiss all claims asserted against the District, with prejudice, under Rule 12(b)(6) or Rule 56.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: __/s/ Holly G. McIntush__

    Holly G. McIntush
    Texas Bar No. 24065721
    Danielle Dary
    Texas Bar No. 24089111

    8300 N. MoPac Expressway, Suite 220
    Austin, Texas  78759
    (512) 615-2350
    (512) 682-8860 fax
    hmcintush@thompsonhorton.com

**ATTORNEYS FOR THE DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon counsel of record on December 23, 2021, via the Court's ECF/CMF electronic service system as follows:

CIRKIEL & ASSOCIATES, PC
Mr. Martin Jay Cirkiel, Esq.
1901 E. Palm Valley Blvd.
Round Rock, TX  78664

_/s/  Holly G. McIntush_

## **EXHIBITS**

| Exhibit | Document |
|---------|----------|
| **A.** | Declaration of Karen Reich, dated December 6, 2021 (UNDER SEAL) |
| **B.** | Declaration of Patrick Hinson, dated December 7, 2021 (UNDER SEAL) |
| **C.** | Declaration of Sacha Brown, dated December 7, 2021 (UNDER SEAL) |
| **D.** | Declaration of Maribel (Bel) Portillo, dated December 7, 2021 (UNDER SEAL) |
| **E.** | Declaration of Billy Coleman, dated December 7, 2021 (UNDER SEAL) |
| **F.** | Plaintiff's Response to LTISD's First Set of Interrogatories (UNDER SEAL) |
| **G.** | Declaration of Hank Carter, dated December 17, 2021 |
| **H.** | Plaintiff's Response to LTISD's First Set of Requests for Production |
| **I.** | Email Communications between Plaintiff's Mother and Patrick Hinson Produced by Plaintiff (UNDER SEAL) |