UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JANE LTISD-DD DOE,<br>*Plaintiff*<br><br>v.<br><br>LAKE TRAVIS INDEPENDENT<br>SCHOOL DISTRICT,<br>*Defendant* | §<br>§<br>§<br>§   No.  A-19-CV-00430-RP<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Lake Travis Independent School District's ("Lake Travis ISD") motion to dismiss and motion for summary judgment, Dkt. 65; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.   FACTUAL BACKGROUND

This Title IX lawsuit arises from Plaintiff Jane LITSD-DD Doe's accusations of sexual harassment against her former softball coach. Dkt. 64; Dkt. 69-4.[1] Doe alleged that after reporting that her high school softball coach, Billy Coleman,

---

[1] Lake Travis ISD filed objections to the affidavits Doe submitted with her response, requesting that the Court strike from the summary judgment record "all declaration statements that violate FRCP Rule 56(c)(4)." Dkt. 73, at 1-2. The undersigned has reviewed these motions and the evidence and determines that the evidence at issue is not central to the undersigned's conclusions, and sustaining Lake Travis ISD's objections would not change the result. Accordingly, the undersigned **DENIES AS MOOT** Lake Travis ISD's objections to Doe's summary judgment evidence, Dkt. 73.

1

inappropriately touched her "all the time," Lake Travis ISD retaliated against Doe for making the report by failing to properly investigate the alleged abuse, and allowing Doe to be bullied by other students "almost on a daily basis," all in violation of Title IX. Dkt. 64, at 5-9; Dkt. 69-4, at 1-3. Doe first reported, though her father, the alleged harassment to her school's principal in September 2017. Dkt. 66-2, at 2, 5-7; Dkt. 69-4, at 1; Dkt. 69-5, at 1. Two days after reporting Coleman's behavior, Doe's father went to the school to be with Doe while she was interviewed about her allegations and encountered an "angry mob of 15 or so parents that had congregated in front of the school" that "wanted to talk to the principal." Dkt 69-5, at 2.

Assistant principal Patrick Hinson conducted an investigation of the complaint, in which he determined that while Coleman had not engaged in "prohibited harassment," he had "cause[d] some students to feel uncomfortable or offended." Dkt. 66-2, at 11. While none of the 21 students interviewed witnessed Coleman harass Doe, two students reported being "tapped or slapped on the buttocks" by Coleman and five reported seeing him touch other students in this way, while another student described an incident where Coleman had massaged her left shoulder and told her "that he needed to work out the tightness." *Id.* at 7-8. Ultimately, Lake Travis ISD decided to retrain all its coaches on sexual harassment under Title IX, and allowed Coleman to return to work with the instruction to limit his physical contact with students. *Id.* at 11; Dkt. 25-3, at 3.

After the conclusion of the investigation, Doe was bullied by her other teammates, who refused to warm up with her, ignored her, made "nasty comments,"

and generally ostracized her. Dkt. 69-4, at 1-2. The bullying caused Doe to feel "lonely," "abandoned," and suicidal. *Id.* at 2. Emails exchanged between Doe's mother and the school administration reveal that Coleman's stepdaughter, E.C., who also attended school with Doe, bullied Doe on several occasions in the fall of 2017 by crossing out Doe's name from a team roster, writing "[Doe] is gone" on the softball whiteboard, by creating a hangman game where the solution was "[Doe] is gone," and by telling a group of girls that Doe needed to "close her legs." Dkt. 66-2, at 24-27.

Doe reported the bullying she experienced to her school counselor, Bel Portillo, and her special education case manager, Sacha Brown. Dkt. 69-4, at 1-2. Email exchanges between Portillo, Brown, and Doe's parents between October and December 2017 reveal that the counselor and case manager assisted Doe in switching classes to avoid certain students who were bullying her, and in rescheduling tests and assignments to accommodate Doe. Dkts. 66-3, at 4-30; 66-4, at 5-14. Assistant principal Hinson also addressed the complaints from Doe and her parents regarding the alleged harrassment by conducting an investigation, and disciplining E.C. Dkt. 66-2, at 2. As a result of an admission, review, and dismissal ("ARD") meeting with Doe's parents, Lake Travis ISD agreed to allow Doe to drop softball, and accommodated other requests for changes to Doe's schedule. *Id.* at 32. Doe's parents ultimately decided to remove Doe from Lake Travis ISD, and sent her to a neighboring school district. Dkt. 66-2, at 3, 44-48.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the

evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*. After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary

judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

#### A. Motion to Dismiss

Lake Travis ISD first moves to dismiss Doe's third amended complaint for failure to state a claim, arguing that Doe has not pleaded sufficient facts to show that she was subject to retaliatory harassment, or that an appropriate school district official had knowledge of the retaliation and acted with deliberate indifference to it. Dkt. 65, at 10-16. Doe responds that the bullying she experienced after reporting Coleman's harassment was sufficiently severe and pervasive to be actionable as retaliation under Title IX, and that school officials were aware of the hostile environment Doe was subject to and did not take proper steps to keep her safe. Dkt. 70, at 11-19.

Title IX prohibits discrimination on the basis of sex in federally-funded educational programs, and is enforceable through an individual's private right of action for the recovery of damages. 20 U.S.C. § 1681(a); *Davis v. Monroe County Board of Education,* 526 U.S. 629 (1999). A school district may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment. *Sanches*

*v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011); *see also Davis*, 526 U.S. at 629. Lake Travis ISD attacks the sufficiency of Doe's complaint with regard to the severity of her alleged harrassment and the actual knowledge of such harrassment by the district. Dkt. 65, at 13-15 ("Plaintiff has not pleaded retaliatory harassment by E.C or any other students, or parents that were reported to an 'appropriate official' at LTISD.").

First, Lake Travis ISD argues that Doe has not pleaded retaliation sufficiently severe to be actionable under Title IX. *Id.* at 13-14. Lake Travis ISD argues that Doe has not alleged "any specific actions" to support her contention that her classmates engaged in retaliatory bullying or harassment. Dkt. 65, at 13-14. Doe responds that under the totality of the circumstances, the alleged harassment was sufficiently severe to state a claim under Title IX. Dkt. 70, at 12-14. The undersigned agrees. While Lake Travis ISD characterizes the bullying Doe alleged as the mere "withholding of friendship," Doe has in fact alleged that in addition to being subject to "daily bullying and harassment" by her softball teammates after making a complaint against Coleman, "in one class someone posted a picture of a hangman's noose on a whiteboard with Plaintiff's name on it and proclaiming '___ is dead.'" Dkt. 64, at 7.

Such allegations of "regular and continuous" bullying, including the hangman's incident suggesting Doe's death, are sufficiently severe and pervasive to survive a motion to dismiss under Rule 12(b)(6). *Id.* at 7-8; *see Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015). Moreover, Doe alleged that the bullying was

so severe that she became suicidal, was diagnosed with Post Traumatic Stress Disorder, Major Depressive Disorder, and Generalized Anxiety, and ultimately transferred to another school district to escape the harrassment. Dkt. 64, at 7-9; *Davis*, 526 U.S. at 654 (student-on-student harrassment found to be sufficiently severe where "petitioner contend[ed] that the harassment had a concrete, negative effect on her daughter's ability to receive an education").

Lake Travis ISD next attacks the "actual knowledge" element of Doe's Title IX claim, arguing that she has not pleaded that any appropriate Lake Travis ISD official was aware of the more severe instances of bullying Doe faced, such as the hangman incident. Dkt. 65, at 14. Yet contrary to Lake Travis ISD's assertion that Doe did not allege that "any [Lake Travis ISD] official with authority to repudiate and correct the behavior ha[d] knowledge of it," Doe in fact alleged that her mother "complained to School District Officials," including the school's athletic director and the assistant principal, "on almost a daily basis." *Id.*; Dkt. 64, at 8. Because "[m]ost courts … have concluded that an 'appropriate person' to notify for Title IX purposes is the school principal or assistant principal," Doe has properly pleaded that the school district had actual knowledge of the bullying Doe experienced. *I.M. by M.M. v. Houston Indep. Sch. Dist.*, No. H-20-3453, 2021 WL 2270271, at *4 (S.D. Tex. June 3, 2021); *Sneed v. Austin Indep. Sch. Dist.*, 490 F. Supp. 3d 1069, 1086 (W.D. Tex. 2020) (finding that contacts with high-level school officials such as assistant principals and interim principals were sufficient to satisfy knowledge requirement).

Because Doe has properly pleaded her Title IX retaliation claim, the undersigned will recommend that the District Court deny Lake Travis ISD's motion to dismiss.

### B.  Motion for Summary Judgment

Lake Travis ISD next moves for summary judgment on Doe's Title IX claim, arguing that Doe does not meet her burden of showing that she experienced severe, pervasive retaliatory harrassment that was reported to the school district, or that the district was deliberately indifferent to any instances of such harrassment that were reported appropriate school officials. Dkt. 65, at 16-24. Doe responds that she has presented adequate evidence demonstrating that the Lake Travis ISD was aware of the hostile environment Doe was subjected to, and there is a genuine issue of material fact as to whether the school district was deliberately indifferent to the retaliatory harrassment. Dkt. 70, at 21-27.

Lake Travis ISD argues there were only four instances of bullying that Doe's mother complained of to the school district, which do not constitute retaliatory harrassment, and in any event, Lake Travis ISD promptly investigated the reported bullying and offered Doe support while disciplining the student who had bullied Doe. Dkt. 65, at 17-19. Doe responds that when viewing the "totality of the circumstances," Lake Travis ISD was "woefully feeble" in responding to the bullying Doe encountered after making a complaint against Coleman. Dkt. 70, at 22-27. The undersigned agrees with Lake Travis ISD that Doe has not presented evidence supporting her contention that her alleged harrassment was sufficiently severe, pervasive, or objectively

10

unreasonable to be actionable under Title IX. Moreover, even assuming Doe can show retaliatory harrassment, she has failed to show the existence of material dispute of fact on the issue of deliberate indifference.

To be actionable under Title IX as retaliation, the harassment at issue "must be more than the sort of teasing and bullying that generally takes place in schools; it must be 'severe, pervasive, and objectively unreasonable.'" *Sanches*, 647 F.3d at 167 (quoting *Davis*, 526 U.S. at 652). The record reflects that Doe experienced bullying at the hands of her former teammates, led by Coleman's stepdaughter E.C., which ran the gamut from "nasty comments" and social ostracism, to Doe's father encountering an "angry mob" outside of school when he came to support his daughter after complaining of Coleman's alleged harrassment. Dkts. 66-2, at 24-27; 69-4, at 1-2. As in *Sanches*, where the Fifth Circuit affirmed a grant of summary judgment on a student's Title IX retaliation claim where the alleged harassment consisted of four incidents involving name-calling, rumor-spreading, and a potential "butt-slap incident," here Doe's alleged harrassment—though "inappropriate and immature"—was not severe, pervasive, or objectively unreasonable. *Sanches*, 647 F.3d at 167.

Lake Travis ISD has thus met its initial burden of demonstrating an absence of evidentiary support in the record for Doe's Title IX claim, and to defeat its motion, Doe must designate "specific facts" in the record "showing that there is a genuine issue for trial." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006); *Celotex*, 477 U.S. at 324. Doe does not offer any summary judgment evidence to demonstrate that she was subject to harassment aside from that

described above, referring to a "veiled threat of violence" from a parent and "veiled threats through social media"[2] while citing only to her amended complaint. Dkt. 70, at 15-18.[3] Yet Doe must "go beyond the pleadings" to identify particular facts indicating that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. She has failed to do so.

Even accepting Doe's invitation to consider the "totality of the circumstances" surrounding the bullying, Doe's alleged harrassment is not sufficiently severe to be actionable under Title IX. Dkt. 70, at 12-13; *see Sanches*, 647 F.3d at 167 (noting that "the sort of unpleasant conflict that takes place every day in high schools … is not the proper stuff of a federal harassment claim"); *Davis*, 526 U.S. at 652 ("[d]amages are not available for simple acts of teasing and name-calling among school children … even where these comments target differences in gender"). Moreover, Doe's reliance on *Moore v. Bryant* to suggest that E.C.'s use of Doe's name in a game of hangman support her allegations that the harrassment was "severe" because "it well-settled that the use of a noose is a symbol of like no others" is particularly misplaced given that Doe has not alleged that she is Black, or that her harrassment entailed any racial element. 205 F. Supp. 3d 834, 851-52 (S.D. Miss. 2016)

---

[2] Moreover, it is unclear that the harassment Doe experienced through social media is "subject to the schools district's control," as required to hold the Lake Travis ISD liable to retaliatory harrassment under Title IX. *See* Dkt. 70, at 3, 8; *Davis*, 526 U.S. at 645 ("because the harassment must occur 'under' 'the operations of' a funding recipient, the harassment must take place in a context subject to the school district's control").

[3] The undersigned once against notes that the objected-to portions of Doe's affidavits would not change the analysis regarding the severity of Doe's alleged harrassment. *See* Dkts. 69-3; 69-4; 69-5; 73-1; 73-2; 73-3.

While the undersigned is sympathetic to the impact this bullying had upon Doe, the standard is not "subjective," but rather asks whether the harassment is "*objectively* unreasonable." *Sanches*, 647 F.3d at 167. Doe has failed to designate any facts that would suggest that her alleged harrassment was more severe than that which has been described above, even considering the objected-to portions of the declarations attached to her response, and has not noted any case law that would bring her alleged harrassment under the purview of Title IX. *Id.* (affirming summary judgment in favor of school district appropriate where "conduct may have been inappropriate and immature and may have hurt [plaintiff]'s feelings and embarrassed her, but it was not severe, pervasive, and objectively unreasonable").

But even if Doe had met her burden to show that genuine issues of material fact to prevent summary judgment on the basis of the severity of her alleged harrassment, Doe's claim also fails because she cannot show that Lake Travis ISD was deliberately indifferent to her alleged harrassment. The parties do not dispute that in response to Doe and her mother reporting the alleged harrassment to the school administration, Lake Travis ISD provided Doe with academic support and allowed her to change her schedule to avoid E.C. and the others responsible for the bullying. Dkts. 65, at 18-19; 70, at 23. The record further demonstrates that the school's assistant principal investigated the alleged harrassment, disciplined E.C., and that Doe had her case manager and counselor available for support. Dkts. 66-2, at 2; 66-3, at 4-30. Doe complains that Lake Travis ISD's response was insufficient because it should have admonished parents of softball players, provided psychological

13

support to Doe, and offered to move other students' schedules instead of separating Doe by allowing her to change her schedule to avoid E.C. and others. Dkt. 70, at 26.

The record reflects that Lake Travis ISD took responsive action that was not "clearly unreasonable," as required to show that a school district's response to alleged harassment was deliberately indifferent. Dkt. 66-3, at 4-32; *Sanches*, 647 F.3d at 167 ("For a school to be liable under title IX, its response, or lack thereof, to the harassment must be clearly unreasonable in light of the known circumstances." (internal citations omitted)). Doe has identified no specific facts to dispute the steps Lake Travis ISD took to remedy the alleged harrassment, and has once again failed to cite any case law that would suggest that the school district's response was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Because no reasonable jury could find that Doe's alleged harrassment was severe, pervasive, and objectively unreasonable, or that Lake Travis ISD's response to that alleged harrassment was "clearly unreasonable," the undersigned will recommend that the District Court grant Lake Travis ISD's motion for summary judgment.

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Lake Travis ISD's motion to dismiss and motion for summary judgment, Dkt. 65. Specifically, Lake Travis ISD's motion to dismiss should be denied, and its motion for summary judgment should be granted. Doe's Title IX claim should be dismissed with prejudice.

The referral of this case to the Magistrate Court should now be canceled.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED March 23, 2022.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE